## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| BETTY J. MECHLER, MARCIA E. MECHLER, | ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **Civil Action No.:** |
| | ) **1:07-CV-00724-CB-M** |
| JOHN HANCOCK LIFE INSURANCE CO.; JOHN HANCOCK MUTUAL LIFE INSURANCE CO,; JOHN HANCOCK FINANCIAL SERVICES, INC.; MANULIFE FINANCIAL CORP.; et al., | ) ) ) ) ) ) ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

COME NOW the Defendants, John Hancock Life Insurance Company; John Hancock Mutual Life Insurance Company; John Hancock Financial Services, Inc.; and Manulife Financial Corporation; and, in opposition to Plaintiffs' Motion to Remand (Doc. 10), submit the following memorandum of law.

**INTRODUCTION**

The sole basis for Plaintiffs' Motion to Remand is the contention that Defendants have failed to meet the requisite amount in controversy to invoke federal jurisdiction under 28 U.S.C. §1332. In the Notice of Removal (Doc. 1), Defendants assert that the required jurisdictional amount is satisfied because Plaintiffs' breach of contract claim involves a long term care insurance policy whose maximum benefits are $58,400 and seeks damages for, among other things, physical injuries and past and future pain and suffering as a result of the 84 year-old Mrs. Mechler's broken hip and nursing home residency.  In response, Plaintiffs contend that this case is due to be remanded because the Complaint's ad damnum clause is silent and because the Eleventh Circuit's three judge panel decision of Lowery v. Alabama Power, 483 F.3d 1184 (11th Cir. 2007) requires that the amount in controversy be unambiguously established in order for removal to be proper.

Defendants do not ask this Court to speculate as to the amount in controversy. Despite Plaintiffs' protestations to the contrary, the amount in controversy is "readily deducible" from the substantial nature of the damages and injuries alleged in the Complaint and thus federal jurisdiction exists in this case under the Lowery standard. See id. at 1211; Sanderson v. Daimler Chrysler Motor Corp., 2007 WL 2988222 (S.D. Ala. Oct. 9, 2007)(interpreting Lowery and ruling that the requisite $75,000 amount

in controversy may be established solely by the nature of the injuries alleged).

Notwithstanding Defendants' position that they have met their burden in establishing

that the required jurisdictional amount is satisfied, if the Court finds that Plaintiffs'

Motion to Remand casts doubt as to the amount in controversy, given that the Motion

is premised almost entirely on the unprecedented <u>Lowery</u> decision, which is currently

awaiting rehearing by the full Eleventh Circuit, the Court should withhold any ruling

in favor of remand until such rehearing occurs.

## STATEMENT OF FACTS

### I.    Allegations of the Complaint

1.    Plaintiffs, 84 year-old Betty J. Mechler and her daughter, Marcia

Mechler, have brought suit against Defendants for alleged wrongdoing surrounding

a long-term care insurance policy issued to Betty J. Mechler on August 28, 2005, by

John Hancock Life Insurance Company.

2.    Specifically, Plaintiffs allege that Defendants, through communications

with Marcia Mechler, who held a power of attorney on behalf of her mother,

> engaged in a shell game with the Plaintiffs, changing their internal procedures
> relative to the submission of Plaintiff's claims, and thereafter refusing to pay
> the Plaintiff based on its own conduct of changing its procedures. Plaintiff
> alleges that the Defendants' conduct in this regard is intentional, part of a
> pattern and practice of wrongful conduct, and designed to delay payment to its
> insureds such as the Plaintiff, with full knowledge that the Plaintiff would

suffer      financial and possibly physical harm from its failure to pay as required
by the      insurance policy.

(Complaint, attached as Ex. A to Notice of Removal, at ¶ 18). The Complaint alleges

that such wrongdoing occurred over a period extending from at least May 18, 2005,

when Defendants acknowledged receipt of Betty J. Mechler's initial claim, to the

present. (See id. at ¶ 5-22).

      3.     The Complaint contains three causes of action - one for breach of

contract, one for bad faith refusal to pay insurance benefits, and one for bad faith

failure to investigate. The Complaint seeks both compensatory and punitive damages

and specifies that Plaintiff Betty J. Mechler "has suffered physical injuries, past and

future pain and suffering, past and future mental anguish, [and] past and future

medical expenses[.]" (See id. at ¶ 24). Nowhere in the Complaint do Plaintiffs limit

their recovery to less than $75,000.

## II.   <u>Diversity Of Citizenship</u>

      4.     It is undisputed that complete diversity of citizenship exists between the

parties. (See Motion to Remand, Doc. 10, at ¶ 3).

III.   **Amount In Controversy**

A.   **Breach of Contract**

The Complaint raises the following monetary sums, costs, and losses for breach of contract.

**Policy Maximum Benefits = $58,400**

5.   It is undisputed that the policy provides for maximum benefits of $58,400, consisting of $29,200 in nursing home coverage and $29,200 in home health coverage.  (See id. at ¶ 5 and Part 2 of policy).  Plaintiffs allege that Plaintiff Betty J. Mechler has received both home health care and nursing home care and that:

> [a]s a proximate consequence of the Defendants' breach of contract, Plaintiff Betty Mechler has failed to received those benefits as outlined in part 2 of said policy, and further, has suffered physical injuries, past and future pain and suffering, past and future mental anguish, past and future medical expenses,
and   has been forced to move into a nursing home due to her inability to care for herself, due to her broken hip.

(See id. at ¶ 24).

**Consequential Damages From 84 Year-Old Plaintiff Betty J. Mechler's Fractured Hip**

6.   The Complaint alleges that, due to Defendants' wrongdoing, Plaintiff Betty J. Mechler was left alone at home without a home health aide and fell, fracturing her hip:

Page 5 of  26

Consequently, on or about August 11, 2007, the Plaintiff was left alone at her home without a home health care aid.  At said time and place, the Plaintiff attempted to walk to the kitchen while using a walker, <u>at which point she fell fracturing her hip</u>.  Plaintiff alleges that had the Defendants paid under the policy as they were required to do, that Plaintiff would have had sufficient funds so as to have a home health care aid with her at the time, which would have ultimately prevented her from falling and suffering such injuries and damages.

(<u>Id.</u> at ¶ 22)(emphasis added).

### Consequential Damages From Plaintiff Betty J.  Mechler's Being "Forced To Move Into A Nursing Home"

7.     The Complaint alleges that Plaintiff Betty J.  Mechler "has been forced to move into a nursing home due to her inability to care for herself, due to her broken hip."  (<u>Id.</u> at ¶ 24).

### Allegation Of $10,000 In Premium Payments Due Plaintiffs

8.     The Complaint alleges that Plaintiff Betty J.  Mechler has continued to make premium payments to Defendants for the subject policy "in the total amount of approximately $10,000, notwithstanding the fact that she is entitled to have her premium waived under the benefit section of said policy."  (<u>Id.</u> at ¶ 20).

### Allegation Of Out-Of-Pocket Expenses Due Plaintiff Marcia Mechler

9.     The Complaint alleges that "Plaintiff Marcia Mechler has been forced to incur out-of-pocket expenses related to the payment of bills that should have been paid by the Defendants but for the Defendants' breach of contract."  (<u>Id.</u> at ¶ 25).

### Mental Anguish

10.     The Complaint alleges that, as a proximate consequence of Defendants' breach of contract, Plaintiff Betty J.  Mechler has suffered and will suffer past and future mental anguish.  (See id. at ¶ 24).

### B.     Bad Faith

11.     The Complaint contains one count of bad faith refusal to pay insurance benefits (see id. at Second Cause of Action) and one count of bad faith failure to investigate.  (See id. at Third Cause of Action).  Both counts allege that "[t]he Defendants intentionally refused to pay the Plaintiff's claim" and that as a proximate consequence of Defendants' bad faith, "the Plaintiff suffered those compensatory damages as set forth hereinabove" and which Defendants have cited in the foregoing paragraphs.  (Id. at ¶ 4, 7 of Second and Third Cause of Action).  Each bad faith count "demands judgment against the Defendants . . . for compensatory and punitive damages, plus interest and cost."  (Id. at Second and Third Cause of Action).[1]

---

[1]     In assessing the amount in controversy for removal purposes, the damages claimed in each count of a complaint may be aggregated when the counts rely on a different cause of action.  See Nickelson v.  Nestles Milk Prods.  Corp., 107 F.2d 17, 18 (5th Cir.  1939).

## STANDARD OF REVIEW

The removing party bears the burden of establishing federal diversity jurisdiction.  Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996).  "[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional amount."  Sanderson, 2007 WL 2988222, * 1 (S.D. Ala.  Oct.  9, 2007) quoting Tapscott v.  MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir.  1996), overruled on other grounds, Cohen v.  Office Depot, Inc., 204 F.3d 1069 (11th Cir.  2000).  "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement."  Id.  quoting Williams v.  Best Buy Co., 269 F.3d 1316, 1319 (11th Cir.  2001); accord Lowery v.  Alabama Power Co., 483 F.3d 1184, 1211 (11th Cir.  2007)("If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.")(emphasis added).  As shown below, in the present case Defendants have met their burden of invoking federal diversity jurisdiction in the Notice of Removal because the amount in controversy is "readily deducible" from the Complaint.

## LEGAL ARGUMENT

## I. THIS COURT HAS JURISDICTION OF THIS MATTER BECAUSE THE AMOUNT IN CONTROVERSY EXCEEDS $75,000, EXCLUSIVE OF INTEREST AND COSTS

Defendants have removed the case to this Court pursuant to 28 U.S.C. § 1332(a), which provides that the district courts shall have original jurisdiction of all civil actions where the "matter in controversy" exceeds $75,000, and is between citizens of different states. Both of these requirements are met here.

### A. The Amount In Controversy Is Readily Deducible From The Complaint Based On The Substantial Nature Of The Injuries Alleged

Plaintiffs argue that because the Complaint does not make a specific demand for damages, Defendants have "no evidence upon which to rely in removing this case" given the holding of Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007). (Motion to Remand at ¶ 13). This precise argument was rejected by the Southern Division in the recent decision of Sanderson v. Daimler Chrysler Motor Corp., 2007 WL 2988222 (S.D. Ala. Oct. 9, 2007). In short, Sanderson points out that, even where a complaint does not include an ad damnum clause, certain injuries satisfy the jurisdictional amount by their very nature.

Sanderson concerned a complaint alleging that a vehicle being driven by plaintiff Theresa Sanderson struck a light pole and that, because the air bag did not

deploy, she suffered "serious and permanent disfigurement and scarring to her face and body." Id. at *1.  The defendant timely removed on the basis of diversity.  The plaintiffs conceded that the parties were of diverse citizenship, but argued that "there is no evidence" before the Court that the amount in controversy exceeded $75,000. Id.  The Court observed that, in the absence of an ad damnum clause seeking more than $75,000, "[t]he plaintiffs assume this is the end of the matter". Id.  However, the Court found that the plaintiffs had "overlooked the critical first step in the analysis." Id.  Even where a complaint does not state a specific amount of damages, the Court explained, removal from state court is proper "if it is facially apparent" or "readily deducible" from the complaint that the amount in controversy exceeds the jurisdictional requirement.  Id. quoting Williams v.  Best Buy Co., 269 F.3d 1316 (11th Cir.  2001); Lowery v.  Alabama Power Co., 483 F.3d 1184 (11th Cir.  2007).

The Court ruled that:

> Certain injuries are by their nature so substantial as to make it readily apparent that the amount in controversy requirement is satisfied.  For example, an allegation in a complaint that the plaintiff was rendered a paraplegic would render the case removable, even if the complaint did not expressly demand over $75,000, and even if it was silent as to medical expenses, pain and suffering, mental anguish, and lost income.  In such cases, the description of the injury itself demonstrates that the amount in controversy 'more likely than not exceeds     the jurisdictional amount.'

Id. (emphasis added).  Given the injuries alleged by Sanderson, the Court found that "the complaint of its own force" was sufficient to meet the defendant's burden of establishing that the amount in controversy "more likely than not" exceeds $75,000. Id. at *2.

The Sanderson rationale applies equally to the facts of the present case. Plaintiffs have alleged that Defendants engaged in a shell game lasting more than two years to wrongly refuse to pay Betty J.  Mechler's claims for home health aides, during which period Mechler, who is in her eighties, was experiencing a "deteriorating health condition" and could not be left at home alone safely. (Complaint at ¶ 5).  Due to such wrongdoing, the Complaint alleges, Mechler did not have the finances to provide for a home health aide and so was left home alone and caused to fall and fracture her hip.  The hip fracture in turn allegedly forced Mechler to move into a nursing home.

Defendants do not suggest that, in the strictest sense, the physical injuries involved in the Sanderson case compare to those incurred by Mechler.  However, the cumulative impact of the injuries are comparable.  Mechler's Complaint alleges that Defendants wrongfully, over a period of two years, delayed and refused to pay her claims for home health aides, causing her as a consequence to break her hip and be forced to lose her independence and move into a nursing home.  In Sanderson, the

Court observed that the plaintiff had "experienced a shattering loss that few would be willing to share at any price." Id. at *2. Mechler's Complaint presents a similar picture of intense loss and anguish, particularly where Mechler presumably purchased coverage for home health aides in a desire to avoid a nursing home.

Setting aside the issue of pain and suffering, it must be repeated that the Complaint directly links the Defendants' wrongdoing with the past and future medical costs of the 84 year-old Betty J. Mechler's fractured hip and residency in a nursing home.[2] Combined with the $58,400 policy limits, the $10,000 in premium payments sought, and the unspecified out-of-pocket costs alleged, it requires no speculation to conclude that the amount in controversy in this matter clearly exceeds $75,000. The Complaint, while carefully avoiding dollar figures, recites costs that, when combined with the $58,400 policy limits and $10,000 in premium payments, are literally incapable of equaling an amount less than $75,000. This Court should apply its holding in Sanderson to find that Plaintiff's alleged injuries are by their nature so substantial as to establish the jurisdictional amount and deny Plaintiffs' Motion to Remand.

---

[2]    According to the website of the American Association of Homes and Services for the Aging, the average monthly cost for a private room in a nursing home is $6,234, or $74, 806 annually.  The average monthly cost for a semi-private room in a nursing home is $5,448, or $65,385 annually.  (See web page attached as Ex. A).

**B.    In The Absence Of Lowery's Prohibition Of Reliance On Documents Not Received From The Plaintiff In Deciding The Amount In Controversy, There Is Little Doubt That Plaintiffs' Motion To Remand Is Due To Be Denied Because Large Damages Are Clearly Possible In This Action Based On Awards In Similar Cases**

The <u>Lowery</u> panel ruled that the value of other tort claims could not be considered because it was not received from the plaintiffs and, at any rate, "we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit." <u>Lowery</u>, 483 F.3d at 1220-21.  This prohibition is in conflict with well-established practice in the Eleventh Circuit.  <u>See</u> <u>Constant v. International House of Pancakes, Inc.</u>, 487 F.Supp.2d 1308, 1309 (N.D. Ala. 2007)(prior to <u>Lowery</u>, Alabama personal injury cases with no <u>ad</u> <u>damnum</u> clause were "regularly" removed when supported by citation to jury awards in excess of $75,000 in similar Alabama cases); <u>Moore's Federal Practice</u>, § 102.101 (3d ed. 2005)(in a diversity case, "state law will determine what is actually financially at stake in the case").  If this Court is in doubt as to whether Plaintiff's Motion to Remand should be denied, Defendants respectfully submit that it would be prudent to withhold its order until after <u>Lowery</u> is reheard by the full Eleventh Circuit.  In the event the case is overruled, there is little question that the amount in controversy is satisfied here based on the fact that large damages are not only possible in this action

but have been awarded under similar circumstances.  (See cases cited at Notice of Removal at p. 7-9).

### 1.  Compensatory Damages For Mental Anguish In A Similar Case

The best example of the extent of compensatory damages for mental anguish possible in this action may be the decision of Foster v.  Life Insurance Co.  of Georgia, 656 So.2d 333 (Ala.  1994), previously cited in Defendants' Notice of Removal at p. 7. Mattie Foster, an elderly woman, lived alone in Grove Hill, Alabama.  By 1986, Foster no longer worked and her sole source of income was her monthly Social Security check of approximately $400.  That year, a Life of Georgia agent visited Foster in her home and advised her to purchase a life insurance policy on herself and her daughter, Sedora.  Foster did so and began paying monthly premiums.  In 1987, at the urging of a Life of Georgia agent, Foster purchased a Medicare supplemental policy despite the fact that, unbeknownst to Foster, she was covered by Medicaid, not Medicare.

In 1991, Foster, accompanied by her daughter, consulted a doctor in Mobile. When the doctor's office clerk requested payment, Foster presented her Life of Georgia Medicare supplemental policy card.  The clerk explained that the insurance was worthless because Foster had Medicaid coverage and thus was not eligible for

benefits under a Medicare supplemental policy.  Foster's daughter paid the $95 medical bill.  By this time, Foster had paid $2,468.60 in policy premiums.

Foster brought suit against Life of Georgia and two of its agents, alleging fraud, wantonness, and breach of fiduciary duty.  The sole evidence in support of mental anguish damages consisted of the following exchange between Foster and her attorney at trial:

> "How has this affected you, Mattie?"
> "It's affected me a lot."
> "..."
> "It's affected me a lot.  After I found out the insurance was not no good [sic] and how much money I put in it when I could have been doing something else with it.  And they really put the pressure on me."

Id. at 336-37.  Foster further testified that her distress did not begin until after she discovered that the policy was worthless and that she sued approximately two months after this discovery.

A jury returned a verdict in favor of Foster on the fraud claim, assessing compensatory damages at $250,000 and punitive damages at $1,000,000.  The trial court reduced the punitive damage award to $250,000. On Life of Georgia's cross-appeal for remittitur of compensatory damages, the Alabama Supreme Court ruled that, based on Foster's testimony, a jury could properly infer that Foster "suffered some measure of mental anguish and emotional distress from the realization that she

had been paying over a fifth of her monthly income to an insurance company for a worthless policy". Id. at 337. However, the Court found that mental anguish damages could be awarded only for the two months between the time Foster discovered the fraud and the time she filed suit and that Foster's testimony of distress for this period could support an award of compensatory damages of only $50,000.

In the present case, the mental anguish alleged is of much broader scope and depth. Mechler has described a period of distress covering not two months, as in Foster, but more than two years. She has alleged premium payments not of $2,468.60, but $10,000. Finally, she has alleged medical costs not of $95, but those related to a fractured hip and full-time nursing home residency. If an award of $50,000 in compensatory damages for mental anguish was affirmed in Foster, an award several times greater in this matter is more likely than not, given the much more serious consequences alleged. Even if Mechler only matched the $50,000 Foster award for compensatory damages, this, combined with the $58,400 policy limits and other losses and suffering alleged, is more than enough to satisfy the jurisdictional amount.[3]

_____

[3]   At p. 7 of the Motion to Remand, Plaintiffs assert that the maximum amount Betty J. Mechler would be entitled to under the policy is $19,000. This figure is arrived at by stating that a) the policy provides benefits of $40 per day; b) Defendants allegedly stated that Plaintiff was entitled to benefits beginning on or about May 18, 2005; and c) the Complaint was filed on September 5, 2007,

### 2.    Punitive Damages

Foster ($250,000 in punitive damages), along with the other jury awards cited at pages 7 through 9 of the Notice of Removal leave no doubt as to the extremely high punitive damages which may potentially be assessed against Defendants in this matter.  The history of large punitive damage awards in the state is well-known.  See Chad E.  Stewart, Comment, Damage Caps in Alabama's Civil Justice System: An Uncivil War Within the State, 29 Cumb.L.Rev.201 (1999).  An image of the state as "tort hell" emerged prior to the 1999 establishment of the punitive damages cap codified at Ala.  Code § 6-11-21.  See id. at 213 quoting Roger Parloff, Is This Any Way To Run A Court?, Politics and Power at the Alabama Supreme Court, Am. Law., May 1997, at 4.  Forbes magazine opined that Alabama "was the worst place in America in which to be a civil defendant."   Id. at 214 quoting  David Frum, Unreformed: Tort Reform in Alabama, Forbes, Feb.  1, 1993, at 82.  See also Fraser v.  Reynolds, 588 So.2d 448, 453 (Ala.  1991)("Juries are given a standardless

---

"approximately 475 days later".  This reasoning is incorrect.  First, May 18, 2005 to September 5, 2007 is 840 days which totals $33,600 in claimed benefits (840 x $40 per day = $33,600) for that time period alone.  Second, Plaintiffs allege that they are claiming "those benefits as outlined in part 2 of said policy" which includes, among other benefits, the Nursing Home Benefit in the maximum amount of $29, 200, the Home Health Care benefit in the maximum amount of $29,200 and the Waiver of Premium Benefit for each month during the period policy benefits are payable.  The date the lawsuit is filed is not determinative of the contractual amount recoverable.

discretion in imposing [punitive damages] in civil cases.")(Maddox, J., dissenting)(emphasis in original).   District Courts in the Eleventh Circuit have traditionally been able to take these realities into consideration in deciding the amount in controversy in a given case.  See Boling v. Union Nat. Life Ins. Co., 900 F.Supp. 400, 404 (M.D. Ala. 1995)(in deciding whether the requisite amount in controversy has been satisfied, "the court should look to decisions rendered in cases of the same type of suit").

Betty and Marcia Mechler's Complaint alleges intentional, repeated misconduct over a period of more than two years, from which Defendants profited through collection of approximately $10,000 in premium payments.   While Defendants vehemently deny these allegations (see Answer of John Hancock Life Insurance Company), as pleaded, the conduct appears reprehensible: that Defendants "engaged in a shell game with the Plaintiffs", changing their claim procedures and refusing to pay Plaintiff's claims "with full knowledge that the Plaintiff would suffer financial and possibly physical harm" from such failure to pay.  (Complaint at ¶ 18). The harm alleged is equally grievous: that Plaintiff Betty J.  Mechler suffered not only mental anguish and financial loss but a broken hip and a forced move into a nursing home.  Were these allegations to be proven, a significant punitive damages award could result.

**C.    Plaintiffs' Cited Post-Lowery Cases Do Not Support Remand**

Plaintiffs have cited several cases decided since <u>Lowery</u> in which district courts have granted remand.  (<u>See</u> Motion to Remand at ¶ 14).  However, despite Plaintiffs' assertion to the contrary, the cases do not involve factual circumstances similar to the present case and are thus distinguishable.  <u>See</u> <u>Allen v.  Bruister & Associates, Inc.</u>, 2007 WL 2081454 (S.D. Ala.  2007)(plaintiff alleged that defendant underpaid him for work performed); <u>Arendall v.  Dennis Joslin Jamaica, Inc.</u>, 2007 WL 2480271 (S.D. Ala.  2007)(plaintiffs alleged that they were not paid commissions promised for debt collection services); <u>Cleveland v.  Ark-La-Tex Financial Services, LLC</u>, 2007 WL 2460753 (S.D. Ala.  2007)(class action suit for violation of Telephone Consumer Protection Act by sending unsolicited fax advertisements); <u>Flowers v.  Priority Healthcare Pharmacy, Inc.</u>, 2007 WL 1424330 (S.D. Ala.  2007)(plaintiffs submitted affidavits declaring that no plaintiff sought, or would seek, damages in excess of the jurisdictional amount); <u>Moore v. Agee</u>, 2007 WL 2156415 (S.D. Ala.  2007)(plaintiff alleged that defendant made threatening statements and gestures toward him); <u>Reed v.  State Farm Mut.  Auto.  Ins.  Co.</u>, 2007 WL 2230586 (S.D. Ala.  2007)(plaintiff sought total recovery of no more than $50,000 in automobile policy benefits; complaint specifically asserted that jurisdictional amount was not sought); <u>Carswell v.  Sears, Roebuck and Co.</u>, 2007 WL 1697003 (M.D. Ala.  2007)(plaintiff alleged

that glass shelf in Sears shoe department fell on her); Ellis Motor Cars, Inc.   v.
Westport Ins. Corp., 2007 WL 1991573 (M.D. Ala. 2007)(failure to properly inspect
and pay for hail damage to planitiff's automobiles); Jackson v.  Peoples South Bank,
2007 WL 1857169 (M.D. Ala.  2007)(plaintiffs alleged that bank made unauthorized
changes to a home loan they had applied for; plaintiffs refinanced the loan amount
with a different lender); Spidell v.  Midland Credit Mgmt., Inc., 2007 WL 3171380
(M.D. Ala.  2007)(plaintiff alleged malicious prosecution and negligence against
defendants for filing suit against him for a debt he claimed he did not owe; plaintiff
prayed for $74,000 for malicious prosecution claim and an unspecified amount for
negligence claim, court found that damages in both counts could be the same and thus
not aggregated); Constant v.  International House of Pancakes, Inc., 487 F.Supp.2d
1308 (N.D. Ala.  2007)(plaintiff alleged injuries sustained in fall at restaurant).

In contrast to the above cases, the amount in controversy is readily deducible
in this matter given the extraordinary injuries alleged - that Defendants, through their
wrongful conduct, caused the 84 year-old Betty J.  Mechler to be left alone in her
home without a home health aide, fall and fracture her hip, and be forced to move into
a nursing home, with all the obvious costs and mental anguish such an experience
entails.  When combined with the $58,400 policy limits and the $10,000 in premium
refunds sought, there is no question that the amount in controversy is in excess of

$75,000.  This Court should follow the Southern District's holding in <u>Sanderson v. Daimler Chrysler Motor Corp.</u>, 2007 WL 2988222, and find that the injuries alleged by Plaintiffs are so substantial as to make it readily apparent that the amount in controversy is satisfied.

## II. ALTERNATIVELY, SHOULD <u>LOWERY</u> CAST DOUBT ON WHETHER REMAND MAY BE APPROPRIATE, THE COURT SHOULD WITHHOLD RULING ON THE MOTION TO REMAND UNTIL SUCH TIME AS <u>LOWERY</u> IS REHEARD BY THE FULL ELEVENTH CIRCUIT COURT OF APPEALS

Plaintiffs' Motion to Remand is premised almost entirely on the decision of <u>Lowery v. Alabama Power Co.</u>  The <u>Lowery</u> decision makes two radical breaks from well-established Eleventh Circuit tradition: 1) that a district court has no discretion to conduct or permit jurisdictional discovery in diversity cases and 2) that the Eleventh Circuit's "preponderance of the evidence" standard for determining whether a removing defendant has established the amount in controversy should be replaced with a higher burden requiring "an unequivocal statement that clearly shows federal jurisdiction".  Unsurprisingly, a Joint Petition for Rehearing En Banc (attached hereto as Ex. B) has been filed and briefed and is awaiting hearing.  <u>Lowery</u> should not be considered or relied upon by this Court until the petition for rehearing is heard because the <u>Lowery</u> panel's decision is an unprecedented departure from existing case law and practice in the Eleventh Circuit.

For instance, "[t]he panel held, without citing any precedent, that jurisdictional discovery into the amount in controversy cannot be used in original cases or in removed cases (slip op. at 64-67) and that a district court has no discretion either to permit the parties to conduct such discovery or to engage in it on its own (id. at 68 & n.76)."  (Ex. B at p. 7).  This holding is in direct conflict with long-standing U.S. Supreme Court principle.  See Gibbs v. Buck, 307 U.S. 66, 71-72 (because "there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court"); Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 n.13 (1978)("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); U.S. Catholic Conference v. Abortion Rights Mobilization, 487 U.S. 72, 79-80 (1988)("Nothing we have said puts in question the inherent and legitimate authority of the court to issue process and other binding orders, including orders of discovery directed to nonparty witnesses, as necessary for the court to determine and rule upon its own jurisdiction, including jurisdiction over the subject matter").

These principals have been upheld in this Circuit, as well.  See Opelika Nursing Home v. Richardson, 448 F.2d 658, 667 (5th Cir. 1971)("the blueprint of the method of determining the length and breadth of the amount in controversy [is] entirely within the discretion of the trial court"); Majd-Pour v. Georgiana Cmty.

Hosp., 724 F.2d 901, 903 (11th Cir.  1984)("On remand, the district court should permit the plaintiff, if he elects to do so, to pursue reasonable discovery to determine if he can show subject matter jurisdiction under any of the theories of the complaint [one of which was diversity]"); Sierminski v.  Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2000)(noting that a district court "may require the parties to submit summary-judgment-type evidence relevant to the amount in controversy"). The Lowery panel's opinion cannot be squared with the clear precedent of the U.S. Supreme Court and this Circuit regarding jurisdictional discovery.[4]

The Lowery panel's heightened burden of proof as to the amount in controversy is also contrary to prior Eleventh Circuit precedent, which, as the panel acknowledged, makes the "preponderance of the evidence" standard the law.  See Tapscott v.  MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir.  1996), overruled on other grounds, Cohen v.  Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n.  5 (11th Cir. 2001); Friedman v.  N.Y. Life Ins.  Co., 410 F.3d 1350, 1352-53 (11th Cir.  2005).

---

[4]    Had Lowery not prohibited post-removal discovery, a practice long recognized in the Eleventh Circuit and federal district courts in this state to resolve questions as to the jurisdictional amount, the amount in controversy in this matter could easily be settled by requiring Plaintiff to answer the Request for Admissions attached as Ex. B to the Notice of Removal.

Given the Lowery panel's break from long-established precedent and tradition, it is easily foreseeable that the decision may not endure in its present state. Withholding any order granting Plaintiffs' Motion to Remand until after Lowery may be reheard by the full Eleventh Circuit will allow the Court to decide with full confidence whether decisions like Foster and the other cases cited in the Notice of Removal may be used to establish the requisite jurisdictional amount.  In light of the Lowery decision's break with long-established U.S. Supreme Court and Eleventh Circuit precedent, this is the only prudent course of action.

## CONCLUSION

It requires no speculation to find that the requisite amount in controversy is readily deducible from Plaintiffs' Complaint.  Thus, Removal was proper in this matter and Plaintiffs' Motion to Remand is due to be denied.


Respectfully submitted,


s/  Charles D. Stewart
Charles D. Stewart (ASB-7467-T63C)
Attorney for Defendants
SPAIN & GILLON, L.L.C.
2117 2nd Avenue North
Birmingham, AL  35203
(205) 328-4100
(205) 324-8866 (fax)

cds@spain-gillon.com

## CERTIFICATE OF SERVICE

I hereby certify that on **November 26, 2007**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert J.  Hedge, Esq.
MILLER & HEDGE
P.  O.  Box 2232
Mobile, AL  36652

Susan F. Wilson, Clerk
MOBILE COUNTY CIRCUIT COURT
C913 Government Plaza
205 Government Street
Mobile, Alabama 36644-2913

and I hereby certify that I have mailed the foregoing by United States Postal Service to the following non-CM/ECF participants:

[None]

s/  Charles D.  Stewart
OF COUNSEL

## **APPENDIX**

Ex.  A        American Association of Homes and Services for the Aging website

Ex.  B        Joint Petition for Rehearing En Banc in <u>Lowery</u> case