IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BETTY J. MECHLER and )
MARCIA MECHLER, )
          )
        Plaintiffs, )
          )
v.                            )       CIVIL ACTION NO. 07-0724-CB-M
          )
JOHN HANCOCK LIFE INSURANCE CO., )
et al., )
        Defendants. )
          )

**OPINION and ORDER**

Currently pending before the Court are two motions filed by the defendant–a motion to dismiss plaintiffs' fraud claim for failure to plead that claim with particularity, as required by Rule 9(b) (Doc. 26) and a motion for partial judgment on the pleadings (Doc. 40). Plaintiffs have responded to both motions. (Docs. 28 & 42.) After careful consideration of the amended complaint in light of the issues raised and the applicable law, the Court concludes that the motion to dismiss is due to be denied and that the motion for judgment on the pleadings is due to be denied, in part, and granted, in part.

**Procedural Background**

This action, which was originally filed in state court and removed to this Court, arises from the defendant's alleged failure to pay benefits due under a long-term care insurance policy. The policy was issued by defendant John Hancock Life Insurance Company to plaintiff Betty J. Mechler in 1995. In 2005 Mrs. Mechler filed a claim for benefits, and on May 18, 2005 defendants\ notified her by letter that she was entitled to home healthcare benefits under the policy. The letter provided a claim number, an address for submission of future claims and a

promise that an explanation of benefits would be mailed separately.  (Am. Compl., Doc. 22, at 2.)  Plaintiffs assert that defendant has successfully avoided paying any claim, despite its acknowledgment that Mrs. Mechler is  entitlement to benefits.

In about November 2005, plaintiff Marcia Mechler, Betty Mechler's daughter who held her mother's power-of-attorney, inquired about the status of payment (*Id.*)  In early November 2005, defendant "advised plaintiffs that a proof of loss [wa]s required in order to process [the claims]."  (*Id.* at 3.)  Marcia Mechler promptly completed the forms provided by defendant and mailed them back, along with proof of payment for home healthcare sitters.  Plaintiffs received no response.  In July 2006, Marcia Mechler again hired home healthcare sitters to take care of her mother.  Again, plaintiffs filed proof of loss and, as before, received no response from defendant.  (*Id*)  After several months, Marcia Mechler contacted the defendant to inquire about the status of the claims.  Defendant responded "that a new form called a[n] 'independent home care provider form for long-term care insurance' must be filled out and mailed to the address on the front of said form."  (*Id.*)  Plaintiffs complied but, once again, received no response from the defendant.  When Marcia Mechler contacted defendant about the lack of response, defendant informed her that the address on the form was incorrect.  (*Id.* at 4.)  Marcia Mechler then complied with defendant's most recent instructions and resubmitted the claims for her mother.  After several weeks, she again called the defendant and this time was told that the original forms she had been sent were out of date.  Defendant faxed the correct forms to Marcia Mechler, who completed the forms and faxed them back to defendant.  (*Id.*)  After a few weeks, she contacted the defendant and was told that defendant did not accepted faxed copies and that the copies must be mailed to an address (different from the address on the form) that had never been provided to

her.  (*Id.* at 5-5.)  On August 11, 2007, Betty Mechler fell and fractured her hip after she was left

alone at home without a home healthcare aide.  According to plaintiffs, "had the Defendant paid

under the policy as they [sic] were required to do[ ] [ ] Plaintiff would have had sufficient funds

so as to have a home health care aid [sic] with her at the time, which would have ultimately

prevented her from falling and suffering such injuries and damages."  (*Id.* at 6.)

      Plaintiffs filed the instant action in state court.  Defendant removed the action to federal

court on the basis of diversity jurisdiction.  Plaintiffs filed a motion to remand, alleging that the

amount in controversy was less than $75,000.  This Court denied the motion to remand.  The

original complaint asserted claims for breach of contract, bad faith failure to pay insurance

benefits, and bad faith failure to investigate an insurance claim.   In their breach of contract

cause of action, plaintiffs seek compensatory damages for benefits due under the policy and

excess premiums paid under the policy. They also seek compensatory damages for injuries

incurred by Betty Mechler, including "physical injuries, past and future pain and suffering, past

and future mental anguish, past and future medical expenses."  (*Id.*)         After the action was

removed, plaintiffs amended  their complaint to add a claim for fraud and fraudulent

suppression.  In the Amended Complaint's Fourth Cause of Action, plaintiffs "re-allege and

incorporate [ ] all of the preceding allegations." They also add the following assertions:  (1) the

defendant "made numerous misrepresentations" about and/or "fraudulently suppressed" the

procedures for obtaining benefits (*id.* at 9); (2) that plaintiffs relied on the misrepresentations and

suppressions (*id.*); (3) defendants used plaintiffs' failure to comply with actual procedures to

deny Betty Mechler's claims (*id.* at 10); (4) "[d]efendant's conduct violated Ala. Code §§ 6-5-

100 through 6-5-104" (*id.*); and (5) that plaintiffs were damaged as a result (*id.*).

**Issues Raised**

As noted above, this order addresses two motions filed by the defendant.  The first is a motion to dismiss Count Four on the ground that it fails to state a claim upon which relief can be granted..  The second is a motion for partial judgment on the pleadings wherein defendant argues that, under Alabama law: (1) plaintiffs cannot assert a tort cause of action based on a breach of contract and (2) plaintiffs cannot recover personal injury damages for breach of contract.  In response, plaintiffs argue that Alabama law does permit recovery for the claims and damages asserted.  Plaintiffs alternatively argue that defendant is judicially estopped from denying that personal injury damages are recoverable.

**Legal Analysis**

**Subject Matter Jurisdiction and Applicable Law**

As discussed in the order denying plaintiffs' motion to remand this case to state court, this Court has subject matter jurisdiction pursuant to the general removal statute, 28 U.S.C. § 1441, based on diversity of citizenship, 28 U.S.C. § 1332.   The parties agree that Alabama law substantive law controls the claims asserted in this action.[1]

**Motion to Dismiss for Failure to State A Claim**

Defendant argues that plaintiffs' Fourth Cause of Action fails to state a claim for fraud or fraudulent suppression because it fails to specify any misrepresentation or fraudulently suppressed fact and, absent such an allegation, it is a bad faith claim.  Furthermore, defendant argues, since claims for bad faith are asserted in the two preceding causes of action, the Fourth

---

[1]Of course, under the *Erie* doctrine a federal court sitting in diversity applies federal procedural law and state substantive law. *Gasparini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Cause of Action is redundant. The question presented by defendant's argument is, potentially, twofold. First, do the allegations of the amended complaint satisfy the specific requirements for pleading fraud? If not, should the Fourth Cause of Action be dismissed for failure to state a claim? Because the fraud claim is stated with sufficient particularity, there is no need to address the latter question.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In *Durham v. Business Mgmt. Assoc.*, 847 F.2d 1505 (11th Cir. 1988), the Eleventh Circuit addressed the tension between the concept of notice pleading and the particularity requirement applied to fraud claims:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the "precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior." . . . The application of the rule, however, must not abrogate the concept of notice pleading. Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.

*Id.* at 1511. Plaintiffs' fraud/fraudulent suppression claim could be better pled; however, the complaint, taken as a whole, sufficiently alerts the defendant to the misconduct with which it is charged. The only purported deficiency that appears to concern the defendant is the plaintiffs' failure to assert specifically that the communications at issue were false. In the Fourth Cause of Action, plaintiffs assert that defendants made misrepresentations (*i.e.* false statements) and suppressed facts about the procedures for obtaining benefits. Factual allegations incorporated by reference into the fraud/fraudulent suppression cause of action set forth several statements (*i.e.*, misrepresentations) made by the defendant regarding the procedures for obtaining benefits.

Altogether these allegations provide a reasonable account of the circumstances alleged to constitute fraud and fraudulent suppression.  Plaintiffs Fourth Cause of Action states a claim for fraud and/or fraudulent suppression, not a claim for bad faith, and is not due to be dismissed as redundant.

**Motion for Partial Judgment on the Pleadings**

Defendant seeks partial judgment on the pleadings "with regard to Plaintiff's claims for damages for physical injuries, past and future pain and suffering, past and future medical expenses, and damages arising from Plaintiff Betty J. Mechler's nursing home residency." (Def.'s Mtn., Doc. 40, at 1. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. . .  We must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  Defendant offers two arguments in support of this motion: (1) personal injury damages cannot be recovered for breach of contract and, implicitly, all damages arise from a breach of contract and (2) damages recoverable for breach of contract do not encompass personal injury damages arising from Betty Mechler's fall.  In response, plaintiffs dispute defendant's arguments and also argue that defendant is judicially estopped from opposing plaintiffs' claims for personal injury damages.

### Plaintiffs May Recover Personal Injury Damages for Bad Faith, Fraud & Fraudulent Suppression

Defendant's first argument is somewhat cryptic in that defendant implies–but does not specifically argue-- that plaintiff cannot recover for *any* cause of action other than breach of contract.   In support of its argument, defendant cites a number of cases that are either outdated

or taken out of context.  For example, defendant asserts that "[u]nder Alabama law, 'a tort action will not lie if the wrong complained of consists of failure to perform a contract, e.g. nonfeasance.' *Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co.*, 545 F.2d 448, 456 (5th Cir. 1977).'"" (Def.'s Mtn, Doc. 50, at 5.)  However, the Alabama Supreme Court has recognized the tort of bad faith for an insured's *misfeasance* in the failure to perform duties under an insurance contract.  *See Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1 (Ala. 1981).  By asserting claims for bad faith, plaintiffs have alleged misfeasance.  In another rather puzzling assertion, defendant points out that under Alabama law an insurer's enhanced duty of good faith sounds in contract.  While this may be true, it has no relevance to the case at hand.  The enhanced duty of good faith, according to case law cited by defendant, applies to an insurer's "duty to defend their insured under a reservation of rights."  *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1309 (11th Cir. 2004).   No such claim has been asserted in this case.

Next, citing *Hamner v. Mutual of Omaha Ins. Co.*, 270 So. 2d 87 (Ala. Civ. App. 1972), defendant argues that plaintiffs cannot recover for fraud or fraudulent suppression arising from the breach of a promise to pay insurance benefits.  In *Hamner*, the complaint asserted that the insurer's failure to pay plaintiff's claim was "oppressive, malicious and fraudulent."  The court of civil appeals held that the plaintiff was attempting to allege an action in tort arising out of a breach of contract and concluded that no such cause of action existed in Alabama.  *Hamner* was decided in 1972.  Since that time, the Alabama Supreme Court has recognized that "'an insurer's conduct in connection with the denial of a claim made under its policy may support a fraud action even in a setting where the insured alleges a bad faith refusal to pay a claim.'"  *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 351 (Ala. 2006) (quoting *State Farm Fire & Cas.*

*Co. v. Slade*, 747 So. 2d 293, 320 (Ala. 1999). In conclusion, notwithstanding defendant's

arguments to the contrary, Alabama law permits plaintiffs to pursue, and recover tort damages

for, bad faith, fraud and fraudulent suppression claims.

**Damages Recoverable for Breach of Contract**

As to the breach of contract claim (and that claim only), plaintiffs' claims for

extracontractual damages require further scrutiny.  In addition to benefits due under the contract,

plaintiffs seek consequential damages for physical injury, pain and suffering , mental anguish

and past and future medical expenses. At least some, if not most, of those damages are related to

Mrs. Mechler's broken hip, which she allegedly suffered because she was unable to afford home

healthcare due to defendant's failure to benefits.  In general, such damages are not recoverable

for breach of contract under Alabama law.  As the Alabama Supreme Court recognized in *USAA*

*v. Wade*, 544 So. 2d 906 (Ala. 1989):  "'[T]he law in this state does not permit recovery for

personal injury, inconvenience, annoyance, or mental anguish and suffering in an action for

breach of a contract of insurance."  *Id.* at 913 (quoting *Vincent v. Blue Cross-Blue Shield of*

*Alabama, Inc*., 373 So.2d 1054, 1056 (Ala.1979) (citations omitted)).

A limited exception to this rule exists with respect to claims for mental anguish.  In *F.*

*Becker Asphaltum Roofing Co. v. Murphy*, 224 Ala. 655, 141 So. 630 (1932), the plaintiff sought

and recovered damages for mental anguish in a breach of warranty action against a roofing

company.  The Alabama Supreme Court upheld the mental anguish award, stating:

> The general rule is that damages cannot be recovered for mental anguish in an
> action of assumpsit.  The ground on which the right to recover such damages is
> denied is that they are too remote, were not within the contemplation of the
> parties and that the breach of the contract is not such as will naturally cause
> mental anguish.  Yet where the contractual duty or obligation is so coupled with
> matters of mental concern or solicitude , or with the feelings of the party to whom

the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded.

Another exception is where the breach of the contract is tortious, or attended with personal injury, damages for mental anguish may be awarded.

*Id.* 224 Ala. at ___, 141 So. at 631 (internal citations omitted). The *Becker* court found that the plaintiff was entitled to recover under both exceptions. First, the court held that the contract dealt with matters of mental concern or solitude because it related to "the plaintiff's residence, her 'castle,' the habitation which she had provided to protect against the elements and to shelter her belongings that she thought essential to her comfort and well-being." *Id.* Second, the plaintiff had suffered personal injury because the leaking roof had made her house damp, soaked her belongings and caused plaintiff to become sick. *Id.* at 632.

The question, then, is whether plaintiffs' mental anguish claim falls within the *Becker* exceptions. In *Ruiz de Molina v. Merrit & Furman Ins. Agency, Inc.*, 207 F.3d 1351 (11th Cir. 2000), the Eleventh Circuit examined Alabama case law applying *Becker* and concluded:

The Alabama Supreme Court has made very clear, however, that all these cases represent an exception to the general rule prohibiting mental anguish damages for breach of contract. These cases deserve special treatment because it is highly foreseeable that egregious breaches of certain contracts-involving one's home or deceased loved one, for example-will result in significant emotional distress. The contractual duties imposed by these contracts are so sensitive that a breach will necessarily and foreseeably result in mental anguish.

*Id.* at 1359-60. To support its argument that the exception does not apply, defendant points to *Stead v. Blue Cross Blue Shield*, 346 So.2d 1140 (Ala. 1977), in which the Alabama Supreme Court rejected a claim for extracontractual damages, similar to the ones sought here, against a health insurer. In reversing an award of damages the court noted that the insurance policy called only for "payment [of money] *to others* for supplies and services furnished Stead *by others*[.]"

*Id*. at 347.

The contract in this case is different from the one in *Stead* and, in many ways, more like those involving a home or loved one. A long-term care insurance policy providing for home healthcare benefits implicates sensitive subject matter–that is, a person's ability to live safely, independently and with dignity in her own home. The ability to remain in one's home despite the infirmities that accompany old age is, in this Court's opinion, one of those matters of "mental concern" or "solicitude" for which the *Becker* court carved an exception.[2] Furthermore, the foreseeable consequences of a breach in this case are quite different from those in *Stead*. In that case, the payment to the provider did not come from the plaintiff's pocket, and there would have been no reason to expect that the insurer's failure to pay the provider would affect the insured's ability to obtain medical care. In contrast, the contract here called for the insured to pay expenses out of pocket and seek reimbursement from the insurer. Hence, it was reasonably foreseeable that a breach of the contract would likely cause an insured, like Mrs. Mechler, to exhaust her own funds. And the inevitable result of the inability to afford home healthcare implicates a matter of mental concern or solicitude, *i.e.*, the loss of the ability to live independently in one's home. For the foregoing reasons, the Court finds that plaintiffs may assert a claim for *mental anguish* based on breach of contract.

The Court has not, however, found any Alabama case law that would allow recovery under a breach of contract theory for other extracontractual damages sought by plaintiffs, *i.e.*, physical injury, pain and suffering, and medical expenses. Plaintiffs argue that these are

---

[2]Because there is no state law directly on point, this Court "must arrive at the decision which reason dictates, with the faith that the state courts will arrive at the same decision." *Insurance Co. of North America v. English*, 395 F.2d 854, 860 (5th Cir. 1968).

consequential damages because at the time the contract was made it was reasonably within the contemplation of the parties that Mrs. Mechler would suffer physical injury if home healthcare benefits were not paid.[3]  This argument ignores the "settled law" that Alabama "does not permit recovery for personal injury. . . for breach of a contract of insurance."  *Vincent v. Blue Cross Blue Shield of Alabama*, 373 So.2d 1054, 1056 (Ala. 1979).  Consequently, the Court finds that defendant is entitled to judgment on the pleadings as to the damages asserted in plaintiff's First Cause of Action for "physical injuries," "past and future pain and suffering," and "past and future medical expenses."[4]

**Judicial Estoppel**

Even if state case law does not allow recovery for the types of damages asserted, plaintiffs argue that the damages are available in this case based on the doctrine of judicial estoppel.  Put simply, the doctrine of judicial estoppel prevents a party from taking a position contrary to a position on which that party previously prevailed in the same, or prior, litigation. *New Hampshire v. Maine*, 532 U.S. 742 (2001).  Plaintiffs contend that defendant has taken contrary positions on plaintiffs' entitlement to extracontractual damages.  According to plaintiffs, "Defendant clearly took a position [in the removal petition and it in its opposition to the motion to remand] that Plaintiff's consequential damages were recoverable" and "should be

---

[3]Damages recoverable for breach of contract include those that could be considered to arise naturally from the breach and those that were reasonably within the contemplation of the parties at the time the contract was made. *Southern Ry. Co. v. Lewis*, 165 Ala. 451, 51 So. 863, 864 (1909).

[4]If plaintiffs' assertion that Mrs. Mechler "has been forced to move into a nursing home. . . due to her broken hip" is intended to assert an additional claim for damages for nursing home care, defendant is also entitled to judgment on the pleadings as to that claim.

used in calculating the amount in controversy."  (Pls.' Brf., Doc. 42, at 17.)   In truth, the

defendant never  conceded that the damages at issue were "recoverable." The removal petition

states that the "breach of contract claim also *seeks* damages" for physical injuries, pain and

suffering, mental anguish and a broken hip and that "*if proven*, those damages alone *could* result

in a jury verdict well in excess of $75,000."  (Removal Pet., Doc. 1, ¶ 14, emphasis added.)

Likewise, in opposition to the motion to remand defendant describes the type of damages

asserted in the complaint but does concede that the damages sought are recoverable.  (Def.'s

Rsp. to Mtn. to Remand, Doc. 12, at 5-6.)  Plaintiffs apparently believe that by relying on

damages sought by plaintiffs as evidence of the amount in controversy defendant has conceded

that those damages are recoverable.  The logical extension of this argument would result in a

minimum recovery of $75,000 in every removal action because removing defendants would be

judicially estopped by their assertions that the amount in controversy exceeds $75,000.  Needless

to say, plaintiffs  judicial estoppel argument is not persuasive.

**Conclusion**

     In accordance with the foregoing discussion, the Court hereby **ORDERS** as follows:

     (1) Defendant's motion to dismiss plaintiffs' Fourth Cause of

     Action is **DENIED**.

     (2) Defendant's motion for partial judgment on the pleadings is

     **DENIED, in part.**  Plaintiffs claims for bad faith refusal to pay an

     insurance claim, for bad faith refusal to investigate an insurance

     claim and for fraud and fraudulent suppression state claims upon

     which relief can be granted.  Therefore, defendant is not entitled to

judgment as a matter of law as to these claims.

(3) Defendant's motion for partial judgment on the pleadings is

**GRANTED, in part.**  As to the breach of contract claim, plaintiffs

are entitled to recover, if proved, extracontractual damages for

mental anguish arising from the defendant's failure to pay benefits.

Plaintiffs are not entitled to recover, as part of a breach of contract

claim, damages for physical injuries, past and future pain and

suffering, past and future medical expenses, mental anguish arising

from Betty Mechler's broken hip, or any other extracontractual

damages.

**DONE** this the 30th  day of September, 2008.




                                        s/Charles R. Butler, Jr.
                                        **Senior United States District Judge**